The following is the opinion at special term:
Patterson, J.
The complaint in this action contains allegations of fraudulent conduct on the part of some of the defendants (other than the Central Trust Company) in the procurement of the decree of foreclosure in the consolidated suit in Texas and in the various proceedings which culminated in the entry of that decree. In the .former suit brought in this court by the present plaintiffs those same matters were considered, and it was held at the special and general terms, in substance, that whatever might be the equities respecting such matters this court was without jurisdiction to afford relief, and that the plaintiff must seek redress in the tribunal which alone had cognizance of the subject. But in the complaint in the former suit were certain charges made against the Central Trust Company in connection with its conduct in an attempt to fix the amount to be paid by the stockholders of the Houston & Texas Central Railway Company (No. 1), to enable them to take shares in the new corporation under the terms of the ninth clause of the reorganization agreement. Upon the trial of that causa it was held that the plaintiffs were entitled to enjoin the trust company from issuing shares in the new corporation for the reason that the trust company had not performed the *968 duty incumbent upon it under the reorganization agreement, with reference to the ascertainment of what the floating debt of the old company and the charges, expenses and liabilities incurred in carrying out the plan of reorganization were. To quote the language of the learned judge before whom the case was tried, “ for the reason, therefore, that the trust company did not in the manner and pursuant to the terms of the reorganization agreement, fix and determine the assessment, the plaintiffs are entitled to-judgment.”
After the decision of the former suit the trust company undertook to and did make another assessment, and it determined that the stockholders of the old railway corporation, to entitle themselves to shares of the new company, must pay 7140-100 per cent of the par value of their old shares. All that we have to deal with on this motion relates to the action of the trust company in. fixing this amount, and that action is challenged on the following; grounds, viz.:
1. That the entire assessment is void because the trust company failed to give the stockholders an opportunity to be heard.
2. That the powers of the trust company were exhausted after it made the so-called first assessment.
3. That when the trust company made the so-called first assessment, it could not, from the attitude .it then (and subsequently) assumed; be impartial in making a second assessment.
4. That certain errors have been committed by the trust company in including in the aggregate of the assessment of 71 40-100 per cent., items which were neither part of the floating debt of the old company nor of the charges, expenses and liabilities of the reorganization.
The complaint also charges upon the trust company fraud in making up the assessment of 71 40-100 per cent., but on the argument of the motion that charge was expressly withdrawn. There is not a symptom or trace of fraud on the part of that company in fixing the amount to be paid by the stockholders,, and it plainly appears that by its agents it gathered the data, examined the facts, made a thorough investigation, considered, the report of the agents in executive committee and also at meetings of the board of directors, and after a careful and prolonged inquiry reached a conclusion and made a statement, giving-in a formal account, and in clear and full detail, all the items entering into its final determination of the amount with which the stockholders were to be charged.
To dispose properly of the first two objections taken to the-action of the trust company, we must understand what the powers and duty of that company were with reference to fixing-the amount of the assessment. The plaintiffs claim that it. stood, if not in the technical relation of an arbitrator, then as acting under the same obligations as an arbitrator, or as a trustee, and an earnest argument has been made, the substance of which is, that the trust company should have proceeded precisely as an arbitrator would have done under a common law submission. It is not so important to define by a descriptive- *969 term the capacity in which the trust company acted as it is to determine what it was bound to do, and for that we look to the provisions of the agreement in connection with the nature and character of the particular business with which it was entrusted. It was neither exclusively an arbitrator nor a trustee nor an appraiser. The duty it had to perform partook somewhat of the characteristics of each of these offices. It was selected by all in interest as their appointee or agent to perform that duty, which was of a peculiar nature, and to be done by it and by no one else. The stockholders who come in to take the benefit of the reconstruction agreement are just as much bound by the selection of the trust company as if they had signed the instrument delegating the power to it. It was to ascertain for all (and its conclusion was to bind all) what constituted the floating debt and the other obligations referred to. In doing this it was bound to bring to the investigation the judgment of its directors. It could not arbitrarily fix the amount nor discharge the duty in a merely perfunctory manner. But when it made the required investigation in a proper way, its determination was to be final and conclusive. In the nature of things it could not be otherwise. It was not contemplated by the parties in interest to do anything else than constitute the trust company the sole and final judge of the amount to be paid by the stockholders. Under any other interpretation the reorganization scheme could never go forward. The trust company’s situation was similar to that of the engineer in Sweet v. Morrison, 116 N. Y., 19; 26 N. Y. State Rep., 445, and that case is in closer analogy with this than those cited by the learned counsel for the plaintiffs.
But in the performance of the duty to the stockholders devolved upon it by the reconstruction agreement, the trust company was not altogether irresponsible. It was bound to proceed and make a determination in good faith, and as I had occasion to say in the former cause, it was part of its duty to furnish a full and open account of the items it adopted as making up the total amount with which the stockholders were to be charged. Without such an account it would be impossible for those stockholders to know whether the trust company had fully and properly performed what was required of it. They were entitled to that information, and it has now been given them.
By that account they are enabled to tell whether the trust company has included items which cannot be regarded either as part of the floating debt, or charges, expenses and liabilities of the reorganization, for by whatever name the trust company may be called, in exercising the power conferred upon it, I apprehend no court having jurisdiction would hesitate to grant appropriate relief if it undertook to force upon the stockholders the burden of claims which in no sense or manner and by no possible fair construction of the reorganization agreement came within its terms as being chargeable against them. And therein, in my judgment, consists all the power the court has to supervise or review the action of the trust company, and the court will not in *970 terfere with its determination, of what should be taken into the account and made part of the: ascertained debt, expenses and'liabilities, if the j udgment of the trust company has been honestly and fairly exorcised upon any doubtful or disputable question that may have arisen in the course of the investigation.
Concerning the first objection stated to the action of the trust company in fixing the assessment, viz.: that it proceeded to do so without giving the stockholders an opportunity to be heard, it is to be remarked that there is nothing in the agreement nor in the nature of the duty to be performed which rendered necessary such a hearing in the first instance. It was entirely competent to the trust company to proceed ex parte to acquire information and obtain proofs from all accessible sources. It was simply impracticable to notify stockholders of the times and places at which it would proceed to gather information and pass upon particular items. Having regard to the fact that the investigation was to be made as well at Hew Orleans and in Texas as at the city of Hew York, and that it consisted among other things of an examination of .books, papers and vouchers, all the preliminary work was necessarily to be done by the trust company alone. If the stockholders wished to be heard it was for them to demand the right, and if that were refused the court, upon good reasons shown, might be called upon to act. But no demand for a hearing was ever made by these plaintiffs, and no refusal was ever given of aid or assistance proffered by any inquiring stockholder. Had offered information been rejected, some fair ground of complaint would have existed, but Mr. Hyde in his affidavit says: “ It is not true, as insinuated in the affidavit (of one of the plaintiffs), that the determination of the trust company was made without affording to the stockholders any opportunity of being heard in reference to the matter, or without any opportunity to present any facts or objections to any items considered by the trust company. On the contrary, it was stated to all inquiring stockholders that the examination and determination was about to be made, and they were invited to furnish the trust company with any information touching any such items and any facts in their possession which might aid th e trust company in its investigation.” There is nothing in the papers contradicting this statement of the vice-president of the-trust company.
To the second objection taken by the plaintiff, it is a sufficient answer to say that the power of the trust company to make the assessment was not exhausted, for the reason that the first attempt to do so was a mere nullity. It never acted in the matter at all, and the very ground of Judge O’Brien’s decision was that it had not so acted. Certain of its officers assumed to make "an assessment. It was their- act, and not that of the company. There never was even a reference of the subject to the board of directors, and, therefore, their judgment never was passed upon it. Hor did the directors ratify or adopt the act of the officers. The company did not lose power or control simply because of the ineffectual attempt of certain of its officers to act in its name. The suggestion that the *971 power of the trust company to make the final assessment was terminated by the notice of June 17, 1890, has been duly considered, but in my judgment is without weight.
As to the third ground of objection, it rests altogether on an unfounded assumption. The inference is drawn that the trust-company cannot be impartial, because of the attempt made previously to fix the amount chargeable against the stockholders, and the attitude of the company in the former litigation. There is nothing to show bias, prejudice or partiality on the part of the directors of the trust company, and no fact is brought forward to support this objection, while the affidavits read by the defendant effectually meet it
We are thus brought to the fourth objection, and at the outset the question arises as to the power of the court to act with reference to it. This subject of the control of the court over the trust company was adverted to by the general term on the appeal from the order continuing the ad interim inj unction in the former suit. It was then held that the stockholders could not “ enjoin the completion of the reorganization until they can investigate the claims upon which the assessment was fixed,” and that they could not proceed as for an accounting with regard to the floating debt, and obtain a final judgment modifying the action of the trust company, and that “ the proposition that the stockholders may come into a court of equity, investigate therein in a general way the justice and validity of each item comprising the floating debt, liquidate by decree the sums which should be allowed and those which should be disallowed, and thereupon settle the proper percentage of assessment, meanwhile tying up the entire reorganization, cannot for a moment be allowed. The true view of the reorganization agreement is that all this is to be done by the trust company.” What was thus said by the general term, while it clearly states that the judgment of the court cannot be substituted for that of the trust company, does not go to the extent of holding that it is powerless to grant any relief if the trust company has imposed upon the .stockholders the payment of claims which they cannot be called upon to discharge under the terms of the reorganization agreement, and as the exact complaint now made is that such claims have been imposed upon them, I have carefully examined those that have been specifically pointed out. If there is any ground whatever for regarding the items criticised as constituting part of the floating debt or charges, ex- • penses and liabilities of the reorganization, or if doubt exists with reference to any of them, and that doubt has been in good faith solved by the adoption of such items, the court cannot interfere, for. as before stated, it will not substitute its judgment for that of the trust company, nor undertake to exercise the function appropriate to that company alone, nor will it assume to review the honestly formed determination of that company upon anything which legitimately came within the scope of its power to act.
The first of the items complained of is that of interest on the new general mortgage bonds and the new consolidated and debenture bonds. The trust company has decided that this j° ° *972 proper charge against the stockholders. It admits in its answer that it is not strictly speaking an obligation of the old corporation, and, therefore, not a part of the floating debt, but it chums that by a proper construction of the reorganization agreement it has correctly included it in the assessment as a liability “ incurred in the reorganization.” It has based its conclusion on these, among other reasons. The holders of the old general mortgage and consolidated mortgage bonds are entitled to interest, the former from July 1, 1887; and the latter from October 1, 1887, on the new bonds to be issued to them, The old bonds have not yet been delivered up and canceled, and the new ones are not issued. The reorganization has been delayed, that is, the property has not yet been turned over by Mr. Olcott, who purchased at the foreclosure sale for those interested in the reorganization, and the delays have been unavoidable. Meantime this interest has been accruing, has matured, and must be met at sometime by the stockholders either paying or providing for it. The Southern Pacific Railway Company has guaranteed it, and if it is not paid now, and that company pays it after the property is conveyed to the new corporation, it could immediately put the claim in judgment and enforce it. From the first this interest has been treated as an obligation of the reorganization. The trust company or the purchaser has received from the receiver from the earuings of the road large amounts of money, and has applied them on account of this interest It has, therefore, always acted on the construction that this interest was a liability of the reorganization to be paid before the property was transferred, and that it is such a liability because it matured during the period of suspense and before the new railway corporation entered into possession and began the operation of the road or received its revenues or its securities were issued.
These grounds cannot be said to be frivolous. They were sufficient to satisfy the judgment of the directors of the trust company, and they have acted in good faith in being influenced by them. If they are mistaken their error cannot be reviewed here, for there is neither fraud, collusion nor palpable mistake, and I cannot say that the construction they have put upon the words “ liabilities incurred in the reorganization ” is altogether without foundation.-
The Hauxhurst item is fully explained in Mr. Hyde’s affidavit.
■ Respecting the $800,000 of general mortgage bonds held by the Southern Development Company and the Morgan Company, there can be no doubt of the power of the trust company under the reorganization agreement The complaint seems to be that while interest is allowed on the whole amount of the claims of these companies, proper credits have not been made. All this subject was exclusively within the authority of the trust company, and the court cannot interfere.
As to the City Bank claim, the trust company was specifically authorized to adjust and settle it, and the’ court cannot interfere in the matter.
*973 The allowance of the large amount of the claim of the Morgan ■Company on the notes issued in 1880 and other years, and after-wards renewed, is attacked on several grounds. It is alleged that it includes notes of $700,000 acquired on the purchase of the railway company by the Morgan Company, but Mr. Hyde shows in his affidavit that this is not so. The railway was purchased, or a majority of the stock of the company was purchased, in 1877, by Charles Morgan, and Mr. Hyde states that no notes are included in the assessment. of earlier date than July 31, 1878. The claim that debts barred by the statute of limitations have been allowed as part of the Morgan floating debt is fully answered in Mr. Hyde’s affidavit. The other considerations urged against the allowance of this Morgan company debt present matters entirely within the authority of the trust company to pass upon, and its judgment cannot now be disturbed.
The allowance of 'the claim of the Lackawanna Iron & Coal Company was also exclusively within the cognizance of the trust company.
The other items do not require particular consideration. That relating to the suits in Texas against the Houston & Texas Central Railway Company, is necessarily an estimated amount. Mr. Hyde explains how it was arrived at, and, as to the reorganization expenses, I can find nothing to show that they are exorbitant. They also must be estimated, and I see no reason to enjoin the carrying out of the reorganization on the ground that the estimate is too high.
After a very careful consideration of the whole case, I am compelled to deny the motion for the injunction. I can see no clear or satisfactory reason for doing otherwise. The trust company, I am forced to believe, has done its duty in good faith, and has exercised its best judgment in passing upon the matters to be determined by it in connection with making this assessment.
Motion denied, with ten dollars costs.
A. J. Dittenhoefer, for app’lts; Almon Goodwin and A. H. Joline, for resp’ts.
Per Curiam.
The order appealed from is affirmed upon the opinion delivered by Justice Patterson at special term.
Vaw Brunt, P. J., Barrett and Bartlett, JJ., concur.