### SYNNOTT v. CUMMINGS.

#### (Circuit Court, D. New Jersey. April 24, 1902.)

1. **CONSTRUCTIVE TRUST—SALE OF CORPORATION—SECRET PAYMENT OF BONUS TO ONE STOCKHOLDER.**

    A stockholder in a corporation, who joins with the other stockholders in a contract for the sale of all the stock and property of the corporation as an entirety, cannot lawfully, by a secret agreement with the purchaser, secure and retain for his own benefit an additional sum, and he can be required to account to his fellow stockholders for a sum so received. Bristol v. Scranton, 57 Fed. 70, distinguished.

2. **ASSUMPSIT—GROUNDS FOR ACTION—MONEY RECEIVED.**

    Where, in such case, the interest of each stockholder in a sum so received can be definitely determined without an accounting, another stockholder may maintain an action in assumpsit to recover his share as money had and received to his use.

¶ 2. See Corporations, vol. 12, Cent. Dig. § 726.

At Law. On motions by each party for the court to direct a verdict.

Action on contract, and declaration in the common counts in assumpsit. At the trial it was shown that the plaintiff and defendant, with one Graham, were the owners of the stock of the Atlantic Match Company, a corporation of New Jersey; Synnott owning three-eighths, Cummings three-eighths, and Graham two-eighths. They were approached by one Eaton, a promoter of the National Match Company, who desired to buy out the Atlantic and made an offer for it; his offer being to take the entire stock of the company, giving in exchange $500,000 of preferred stock and $250,000 common of the proposed National Match Company. In the negotiations plaintiff and defendant acted together for themselves and for Graham, whom Synnott represented. Unknown to the plaintiff, the defendant made a private bargain with Eaton, by which, if the transaction went through, he was to have $200,000 in cash for himself, regardless of what was paid to the others. This was reduced to writing as follows:

"July 19, 1901.

"Memo. of agreement between J. E. Cummings, of the Atlantic Match Co., and F. C. Eaton, of the National Match Co. J. E. Cummings agrees to sell the entire capital stock of the Atlantic Match Co. to F. C. Eaton upon the following terms: Eaton gives in exchange for said stock $500,000 of the preferred stock of National Match Co., $250,000 of common stock of said company, and $200,000 in cash. The Atlantic Match Company stock is to be delivered to the Standard Trust Company, of New York, who will issue temporary receipt or certificate therefor, which shall be exchanged for certificates of stock of National Match Co. as soon as issued, as above stated. The cash payments are to be: $20,000 upon signing of contract for sale, $80,000 on August 5th, and $100,000 on September 5th. The National Match Co. to guaranty Eaton's purchase. The entire bond subscription of the Atlantic Match Co. is to be canceled. Possession is to be given August 1st. Thos. W. Synnott and J. E. Cummings are to be elected directors of the National Match Co., and J. E. Cummings is to remain in the business in employ of National Match Co.

"Correct: F. C. E.
"J. E. C.
"Approved: Jos. Swift."

After some further negotiations, in which Synnott endeavored to secure a better price than Eaton was apparently willing to pay, he finally acceded to the latter's terms, and the following agreement between Synnott, Cummings, and Eaton was executed:

"This agreement, made this 23d day of July, A. D. 1901, between Thos. W. Synnott and J. E. Cummings, of the city of Philadelphia, parties of the first part, and F. C. Eaton, of the city of New York, party of the second part, witnesseth: Parties of the first part, in consideration of the sum of one dollar to them in hand paid by party of the second part, do hereby sell, assign, and transfer to said second party the entire capital stock of the Atlantic Match Company, a corporation duly organized under the laws of the state of New Jersey; said capital stock consisting of seven hundred and fifty thousand ($750,000) dollars preferred stock and two million ($2,000,-000) dollars of common stock. The first parties agree that the bond issue of the Atlantic Match Company, which has been underwritten, to wit, two hundred and fifty thousand ($250,000) dollars shall be canceled. Party of second part, in consideration of above transfer of said Atlantic Match Company's stock, hereby sells, assigns, and transfers to said first parties, or their assigns, five hundred thousand ($500,000) dollars of preferred stock and two hundred and fifty thousand ($250,000) dollars of common stock of the National Match Company, a corporation duly organized under the laws of the state of New Jersey. The parties of the first part agree to deposit said Atlantic Match Company's stock with the Standard Trust Company, of New York, for account of said party, and second party hereby authorizes

said Standard Trust Co. to give in exchange therefor certificates of stock of the National Match Company, as above provided. In witness whereof, the parties have set their hands the day and year above written.

"T. W. Synnott.                    F. C. Eaton."
"J. E. Cummings."

Indorsed: "National Match Company has $1,000,000 of preferred 6% non-cumulative stock and $1,500,000 of common stock, of which $1,000,000 preferred stock and $500,000 of common stock has been subscribed for on terms of subscribers' agreement, leaving $1,000,000 of common stock to be used for future purposes. The liabilities of the Atlantic Match Co. consisting of notes, etc., to the amount of about 94,000, are to be paid by the National Match Co. between date hereof, and Jan. 1, 1902, at which time the bonds of the Atlantic Match Co. will be canceled.                    F. C. Eaton."

On the same date Eaton and Cummings executed the following:

"This agreement, made this 23d day of July, A. D. 1901, between J. E. Cummings, of the city of Philadelphia, of the first part, and F. C. Eaton, of the city of New York, of the second part, witnesseth: Party of first part, in consideration of the sum of two hundred thousand ($200,000) dollars, sells, assigns, and transfers all his right, title, and interest, in and to the stock of the Atlantic Match Co., a corporation duly organized under the laws of the state of New Jersey, to second party. The party of second part agrees to pay said sum of two hundred thousand ($200,000) dollars in the following manner to first party: Twenty thousand ($20,000) dollars on or before July 27th, eighty thousand ($80,000) dollars on or before August 5th, and one hundred thousand ($100,000) dollars on or before September 5th. Party of the first part covenants and agrees that possession of the Atlantic Match Company's business shall be turned over to second party on the 5th day of August, 1901. Party of first part further agrees that, in consideration of one dollar to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, second party shall have the option to purchase first party's interest in the property and business of the Safe Harbor Match Co., which said property is located at Safe Harbor, Pennsylvania, at a price to be determined by examination of the books, said price not to exceed the actual cash paid in to said company. This option to cover a period of six months from date hereof. First party also agrees to use every means to secure balance of Safe Harbor Match Co. on terms above set forth. The first party also covenants and agrees with second party that during the period of this option second party shall have the entire output of the Safe Harbor factory at factory cost of goods. This contract is made part of contract of even date between Thos. W. Synnott, J. E. Cummings, and F. C. Eaton. In witness whereof, the parties hereto have set their hands and seals the day and year first above written.

"J. E. Cummings.                    [L. S.]
"F. C. Eaton.                    [L. S.]"

"The capital stock of the within named Atlantic Match Company having been reduced from $2,750,000 to $2,000,000 by retiring the $750,000 of its authorized preferred stock before the actual issue of any thereof, the within agreement is hereby amended by conforming to such fact the within statement of the capitalization of said company.                    J. E. Cummings.
"F. C. Eaton."

The transaction having been consummated, the Atlantic Match Company's stock was transferred according to the arrangement with Eaton, and the exchange stock in the National Match Company was delivered. Cummings was also paid the $200,000 in cash, which he had bargained for. Upon discovery of this, Synnott brought the present action. At the close of the evidence, both parties asked for binding instructions.

D. J. Pancoast and M. Hampton Todd, for plaintiff.

F. P. Prichard, C. V. D. Joline, and David O. Watkins, for defendant.

ARCHBALD, District Judge [1] (orally). Both sides agree that there are no material facts in dispute, and that the case is therefore to be disposed of by the court as a legal question, which throws the responsibility of it upon me. In meeting this task, however, I have not only the benefit of any previous ideas upon the subject, but of what I may properly characterize as a very lucid and able argument on the part of the respective counsel, which always makes the work of the court much easier. There is no doubt of the right of parties who are jointly interested in a concern to each sell his own interest at his own price, without incurring any responsibility to the other; and, if that was the ruling feature in this case, the plaintiff would have made out no right to recover. But it does not seem to me that that is this case as it stands. We have here an entire thing that is to be sold. While the plaintiff and defendant, and the co-owner, Mr. Graham, each had a distinct interest in the Atlantic Match Company, the whole stock of that concern was bargained for by Mr. Eaton, and agreed to be sold to him as an entirety, and the negotiations that were conducted, looking to that end, were all upon that basis. In those negotiations, Mr. Cummings and Mr. Synnott undertook to speak, not only for themselves, but for Mr. Graham; and the first proposition which we have, which was virtually the one finally carried to a conclusion,—I refer to that of July 18th,—is addressed to Mr. Synnott by Mr. Eaton. The next that we have—the "initialed" agreement; that is to say, the one signed by the initials of Mr. Cummings and Mr. Eaton—also undertakes to treat of the matter as an entirety; and so does the final agreement which consummated the affair. Therefore we have this state of things, and this question presented: Can two parties, who are jointly interested in a corporation or association, or any other matter, although they have separate interests,—can they jointly bargain for the disposition of the whole subject, and then one or the other make a covert and different agreement, for his own benefit, and reciprocally to the disadvantage of his co-owners?

It seems to me that in a court of conscience there could be but one answer to anything of that kind,—that, equitably, a person who undertook to make a bargain of that character would have to account to his fellows for the result; and I can see no escape from that responsibility for the defendant here. He, very clearly and beyond controversy, when these negotiations were going on, while it was being jointly considered and jointly bargained for, made a separate and distinct stipulation, by which he was to receive a very material benefit to himself different from what the others received. It might be suggested, as long as the others got all that they were desirous of getting, and were satisfied with the bargain which they made, that, if he got a better bargain, that was his own lookout; that, to use the expression that has been given here, it did not matter if he "did" the others who were interested with him. But, coming to that low level of the street, if I may call it that, we lose sight of this very material circumstance, and that is, that in bargaining that way for his own benefit he beyond question acted to the detriment of those who were in the negotiation

[1] Specially assigned.

jointly with himself. Here was Mr. Eaton, who was prepared to give, and did give, to Mr. Cummings individually, $200,000 more than he gave to Mr. Synnott, Mr. Graham, and Mr. Cummings together; and, if Mr. Cummings had not exacted that, a better general bargain for all could have been made. Mr. Synnott, according to his testimony, was trying to get more, as seems to have been conceded to have been the fact. But whether it was or was not the fact, it still remains that by this secret bargain Mr. Cummings put that in the way of a possible better bargain made openly between Mr. Eaton for the purchase of the stock of this concern with the three owners of it. Therefore, as I say, if this were a bill in equity, calling upon Mr. Cummings to account, I can see no reason why he would not be compelled to account for that which he has received, not on the principle, perhaps, of agency, but on the general principle of trust. It seems to me that a trust would arise out of the circumstance and out of the relation in which he stood.

Let me say, however, at this point, that, if this case took on a feature which I do not think it has, it might be that the defendant would not have to account; that is to say, if it were clear that these $200,000 were given to Cummings as a distinct and separate sum for something that he himself individually and personally contributed, and which was demanded of him that he should do, or give, or contribute, we should have something which could be supported in his favor. I refer to that, in order that I may put of record that the case in this circuit of Bristol v. Scranton, 57 Fed. 70, and again on appeal, 11 C. C. A. 144, 63 Fed. 218, is clearly in my mind. That case presented that feature. There was there a separate bargain in favor of the defendants in that bill by which they got $350,000 over and above the price of the stock of the concern which they and the plaintiffs were interested in as stockholders. But they got that as a remuneration for a separate and specific agreement, which was demanded of them, that they would not for 10 years themselves go into the iron business, the concern which they were disposing of being in that business. There has been an endeavor to have the case that I am now trying take on that character; but I do not find it in the agreement or in the facts. Mr. Cummings from the outstart says that he asserted to Eaton his right to have something more, stating that he would not dispose of his interest, excepting for a cash consideration; and my remembrance of the testimony is that he suggested the amount from the beginning, or at least quite early in the negotiations. On the 19th of July, according to this memorandum, which was signed by his initials, he brings that out, and asserts his right to have $200,000 over and above what he was to get from the open agreement, which included himself, Mr. Synnott, and Mr. Graham. It is true that, in the agreement dated the 23d of July, which was executed contemporaneously between Mr. Eaton and Mr. Cummings with that which was executed between Eaton, Cummings, and Synnott, we have something brought in which is distinct. But it will be remembered that that was not exacted by Mr. Eaton as part of the original negotiations; that is to say, he did not demand of Mr. Cummings that he should turn over or give an option on the Safe Harbor match works, or the product of it, in con-

sideration of which the bargain was made to give him $200,000 therefor. That is not at all the way the case is shown to be. The agreement is distinct,—that Mr. Cummings was to have $200,000, paid in a specific way, as part of the consideration for his interest in the Atlantic Match Company; and this that is put in was simply exacted afterwards by Mr. Eaton, possibly to recoup himself somewhat for that additional very extra price.

As suggested in the course of the argument, I have no great difficulty with that side of the case. The question that disturbs me most is whether in this action, being an action of assumpsit for money had and received, the plaintiff has made out such a case as entitles him to recover. In equity, I would have very little doubt about it. Can this action stand as a bill, or can this action be maintained without direct proof, as suggested by defendant's counsel, that the moneys, or a specific part of them, belong to the plaintiff? My general remembrance of the law corresponds with the statement of plaintiff's counsel, that an action for money had and received will lie very much as a bill would lie, where it is merely to enforce out of the defendant money that he has received and should account for to the plaintiff. It is true, if we had anything in which there must be an account, the action would not lie, because there would be no specific sum due, and we could not go into an accounting before the jury. Not only do I understand that to be the rule in the state courts, but it would be clearly the rule in the federal courts, where equity and law are kept clear and distinct. But I do not think that we have a case where there would have to be an accounting. As I view it, these matters that I referred to a moment ago, with regard to the Safe Harbor Match Company, would not be allowed to come in as an offset or a matter of account; and therefore I think we may throw them entirely out of the consideration. While it is true they were something that you may say the defendant contributed, yet his bargain was with regard to the sale of his interest in the Atlantic Match Company, in connection with the other interests as a whole; and the detriment to the bargain by his getting this private arrangement affected plaintiff certainly to the extent of his share of this $200,000, regardless of anything as to the Safe Harbor Match Company. That, in fact, was the agreement according to the paper signed on the 19th day of July, which, notwithstanding all that has been said of it, was something that the defendant put his signature to in order to show the bargain to which he would stand; and with regard to the right of the plaintiff to a specific amount, undoubtedly he has to show that he has such a right, but he has done so in what appears. His interest in the concern that was sold was three-eighths, and that is his specific interest in the $200,000 which the defendant received over and above the amount for which he and the others agreed the Atlantic Match Company should be sold. That interest, moreover, is special and personal, without regard to the two-eighths which Mr. Graham would have a right to; and we do not need to go into a court of equity to figure out what the amount of each would be. Neither could claim any more than his own share. They have no joint claim, nor any

specific or special equities to work out, nor has the defendant any with reference to either of them that I can see.

I therefore am of the opinion that the plaintiff has made out a case, and is entitled to recover in this action, and that the amount that he is entitled to recover would be three-eighths of the.$200,000 received by the defendant.

Gentlemen of the jury: Counsel on both sides, as you have already heard me state, agree that this is a question of law for the court, and that on the undisputed facts either the defendant is entitled to a verdict or the plaintiff. In the views which you have just heard me express at some length, I am of the opinion that the plaintiff has made out a case, and that your verdict should be in his favor. I therefore direct that you find a verdict for the plaintiff, and the amount of the verdict will be three-eighths of $200,000, which the defendant admittedly received, with interest from the time that he received it. It was not all paid to him in one sum; $20,000 being received at one.time, $80,000 at another, and $100,000 at another. From the time the amounts were so received, the defendant would hold the money for the benefit, not only of himself, but of his co-owners, to the extent of their respective interests in the concern which was sold.