### WALLER et al. v. TEXAS & P. RY. CO. et al.

(Circuit Court of Appeals, Second Circuit. December 14, 1915.)

No. 52.

1. LIMITATION OF ACTIONS ⬤182—PLEADING STATUTE AS DEFENSE—NECESSITY OF PLEADING.

In a suit in equity it is not essential that the statute of limitation should be specifically pleaded.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 676–680, 682, 695, 705; Dec. Dig. ⬤182.]

2. EQUITY ⬤71—LACHES—LAPSE OF TIME.

In 1872 the B. R. Co. executed a deed of trust on all of its property including its interest in lands in Louisiana granted to it by Congress to

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

aid in the construction of a railroad. The B. Co. did nothing towards perfecting the grant, and subsequently conveyed its property to the N. Co., which later consolidated with another company, forming the defendant company. The railroad having been constructed by agencies other than the B. Co., Congress in 1887 forfeited the grant to the B. Co. and confirmed the title of the N. Co. The bonds secured by the deed of trust matured in 1902, and more than 10 years thereafter, when the period of limitation in both Louisiana and New York had expired, the holders of certain of the bonds brought suit in New York seeking to hold the defendant personally liable on the bonds. All of the facts relied on were known, or could have been ascertained, if any effort with that end in view had been undertaken during the period of limitation. *Held,* that the suit was barred by laches.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 204–211; Dec. Dig. 🔑71.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit by David J. Waller, Jr., and another, trustees under the will of David J. Waller, deceased, in their own behalf and in behalf of all other bondholders of the New Orleans, Baton Rouge & Vicksburg Railroad Company, against the Texas & Pacific Railway Company and others. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

On appeal from a decree which dismissed the bill in a suit commenced by certain bondholders holding 30 bonds of $1,000 each issued by the New Orleans, Baton Rouge & Vicksburg Railroad Company in September, 1872, and payable September 1, 1902. These bonds were secured by a deed of trust by the Baton Rouge Company to the Union Trust Company of New York upon all of the said Baton Rouge Railroads property, including its right of way and land grant given it by Congress.

The following is the opinion of Evans, District Judge, on dismissing the bill:

The time at our disposal affords opportunity only for the very condensed statement which follows, wherein we shall omit all details except those necessary to an understanding of the one essential ground upon which we shall base our judgment. Many other propositions were indeed very ably and elaborately discussed by the learned counsel, but we shall confine ourselves to that one of the defenses upon which we think our decision must turn.

On September 4, 1872, the New Orleans, Baton Rouge & Vicksburg Railroad Company, a Louisiana corporation created in 1869, and which, for convenience, we shall speak of as the Baton Rouge Company, executed a deed of trust to the Union Trust Company of New York to secure the payment of $12,000,000 of its 30-year bonds, each of the denomination of $1,000, the principal of which to become due at the end of 30 years, namely, September 1, 1902, coupons being attached to each bond, whereby the maker of the bond agreed to pay interest semiannually until the principal was due. By this deed of trust (which we shall call the mortgage) the Baton Rouge Company conveyed to the trustee named all of its property including certain conditional interest in lands granted to it by Congress under the act of 1871 (Act March 3, 1871, c. 122, 16 Stat. 573), to aid in the construction of a railroad from New Orleans to Vicksburg. Only 1,500 of these bonds (aggregating $1,500,000) were sold or issued, and of them nearly all were taken up in some way long before their maturity. What was done with the proceeds or how some of them were taken up in no way appears from the testimony, though it is not contended by the plaintiff that any part of the proceeds of those bonds was applied by anybody to the construction of the railroad afterwards built by those who suc-

ceeded the Baton Rouge Company, which latter company never did anything towards actually perfecting the land grant, inasmuch as it appears only to have filed what was regarded as an insufficient map of its general location in the office of the Secretary of the Interior at Washington. The plaintiff's intestate, in due course, for value and before their maturity, became the owner and holder of the 30 bonds described in the bill, each of them being one of those issued under the mortgage referred to, and each being for the sum of $1,000.

Under date of January 5, 1880, the Baton Rouge Company entered into an agreement in writing with the New Orleans Pacific Railroad Company, which we shall call the New Orleans Company, and which was another Louisiana corporation created in 1875. The language of that agreement was as follows:

"This indenture, made the fifth day of January, one thousand eight hundred and eighty, between the New Orleans, Baton Rouge & Vicksburg Railroad Company, a corporation created and existing under and by virtue of a special act of the Legislature of the state of Louisiana, approved December 30, 1869, party of the first part, and the New Orleans Pacific Railway Company, a corporation created and existing under and by virtue of the laws of the state of Louisiana, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of one dollar lawful money of the United States of America to it in hand paid by the said party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, and of other good and valuable considerations, has remised, released, and quitclaimed, and by these presents does remise, release, and quitclaim unto the said party of the second part, and to its successors and assigns forever, all the right, title, and interest of said party of the first part, its successors, or assigns, of, in, or to a certain grant of public lands granted to the said party of the first part by an act of the Congress of the United States, approved March 3, 1871, and entitled 'An act to incorporate the Texas Pacific Railroad Company and to aid in the construction of its road, and for other purposes,' together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profit thereof, to have and to hold all and singular the above mentioned and described premises, together with the appurtenances unto the said party of the second part to its successors and assigns forever.

"In witness whereof, the said party of the first part hath caused its corporate seal to be hereunto affixed, and these presents to be signed by its President and Secretary the day and year first above written.

"W. H. Barnum, President.
"Wm. M. Barnum, Secretary."

Nearly 11 years after the issuance of the bonds described in the bill, namely, in April, 1883, and after the construction of the railroad by agencies other than that of the Baton Rouge Company, the New Orleans Company, for purposes therein recited, executed to John F. Dillon and Henry M. Alexander a deed of trust covering, among other things, the Baton Rouge Company's possible interest in the property referred to in the agreement which we have just copied. This last deed of trust contained a clause as follows: "And whereas the New Orleans, Baton Rouge & Vicksburg Railroad Company has transferred and assigned its right to the said land grant to the said New Orleans Pacific Railway Company, which said last-mentioned company has accepted the same, without, however, assuming or becoming liable for any of the debts, obligations, claims, or charges of the New Orleans Baton Rouge & Vicksburg Railroad Company." There was a consolidation of the New Orleans Company and the Texas Pacific Railroad Company, from which resulted the defendant, the Texas & Pacific Railway Company, and the latter company became bound to pay all the then existing indebtedness of the New Orleans Company, though, unless inferentially, it did not become bound to pay those of the Baton Rouge Company. And here it may be important to recall that the land grant lands, while in any way under the control of the Baton Rouge Company, had in no manner contributed to the construction of the railroad itself. Indeed, the Baton Rouge Company had not paid and never did pay to the United States

even the expenses of the survey of those lands and so entirely nominal had become any claim of that company to the land grants lands that by the act of February 8, 1887 (24 Stat. 391, c. 120) Congress forfeited the grant to the Baton Rouge Company and confirmed the title of the New Orleans Company. In these ways the land may have become liable for the debts of the New Orleans Company and the Texas & Pacific Company, but we have not been able to see how it can be inferred from any statutory provision or any agreement in writing that any trust upon that property could or did expressly or impliedly result for the payment of any of the debts of the Baton Rouge Company.

While, indeed, my sympathies are with the plaintiff as the holder for value of the bonds which are the subject of this action, neither the quitclaim deed we have copied, nor any statute, nor any conjunction of both agreement and statute, have enabled us to see how any express trust ever existed in plaintiff's favor, or in favor of his decedent, except that created by the mortgage to the Union Trust Company as trustee, the bonds and limitations of which are set forth in the deed itself, which instrument, as we have seen, is in effect nothing more or less than a mortgage, and to be treated as such. If, as distinguished from that, there exists now or ever existed any trust, it must necessarily be one which arises ex maleficio or by mere implication and construction. To say the least, it is very difficult to see how any trust apart from the lien created by the mortgage of September, 1872, ever arose or could have arisen. Of course, the lien or trust of that mortgage rested upon the property of the Baton Rouge Company embraced in the mortgage, but that was neither more nor less than an ordinary mortgage lien only. If that lien still exist by virtue of that mortgage it may, of course, be enforced in a direct action in a court having jurisdiction, namely, a court, ether state or federal, sitting in Louisiana. A suit to subject that property to the mortgage must necessarily be brought and prosecuted in the state of the situs of the property and not elsewhere. The situs of that real estate is not here, and this action is not that sort of suit. This suit seeks to enforce the collection of the mortgage debt, not indeed from the property mortgaged, but from another corporation now alleged to be personally liable for it. We have concluded that any such liability, if it exist at all, must be one that is secondary in character and resulting from some trust ex delicto to be implied (if such implication can arise) from some state of fact shown, and not upon any direct undertaking by the New Orleans Company or the defendant to pay the debt of another, to wit, the Baton Rouge Company. This statement will indicate our view to be that our decision must turn upon either one or both of the affirmative defenses made by the Texas & Pacific Railway Company (the only defendant before the court, the others having long ago been dismissed from the cause), and which defenses may compendiously be referred to, the first as that of the statute of limitations, and the second as that which imputes to the plaintiff such laches in bringing his action as should prevent the chancellor from granting relief.

And, first, as to the statute of limitations:

The bonds described in the bill matured in September, 1902. This action was commenced on May 7, 1913, more than 10 years after the bonds became due. The principal and interest would aggregate at this time over $104,000. It is well settled that the law of the forum is that which governs where the statute of limitations is invoked. The forum being New York, the statute of that state is the one to govern in equity causes as well as in actions at law. Lewis v. Marshall, 5 Pet. 470, 8 L. Ed. 195. And see also O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 46 L. Ed. 636. The applicable provisions of the law of New York are embraced in the following sections and parts of sections of the Code of Civil Procedure, to wit:

Section 380 is as follows: "The following actions must be commenced within the following periods, after the cause of action has accrued."

"Sec. 381. Within twenty years: An action upon a sealed instrument. But where the action is brought for breach of a covenant of seisin, or against incumbrances, the cause of action is, for the purposes of this section only, deemed to have accrued upon an eviction, and not before."

"Sec. 382. Within six years: 1. An action upon a contract obligation or liability express or implied; except a judgment or sealed instrument. 2. An action to recover upon a liability created by statute; except a penalty or forfeiture."

"Sec. 388. An action, the limitation of which is not specally prescribed in this or the last title, must be commenced within ten years after the cause of action accrues."

"Sec. 390a. Where a cause of action arises outside of this state, an action cannot be brought, in a court of this state, to enforce said cause of action, after the expiration of the time limited by the laws of the state or country where the cause of action arose, for bringing an action upon said cause of action, except where the cause of action originally accrued in favor of a resident of this state. Nothing in this act contained shall affect any pending action or proceeding."

The court in this connection must avail itself also of the judicial knowledge imputed to it respecting the provisions of the Louisiana Code. That Code seems to fix the period of prescription (or, as we call it, the period of limitation) at not over ten years—that is to say, a suit upon a negotiable instrument is prescribed in five years after maturity, and a suit upon a mortgage is prescribed at ten years after it becomes enforceable. See Merrick's Revised Code of Louisiana. If a suit brought in Louisiana to enforce a mortgage upon real estate situated there is prescribed by ten years' delay after the cause of action has arisen, it would seem that the provisions of section 390a of the New York Code might certainly be applicable to the situation with which we are confronted. This action not being against the mortgagor nor against the maker of the bonds, but against a third party who is a stranger to both, is not a suit upon the mortgage, nor one upon the bonds in any direct way, nevertheless both the mortgage and the bonds are in a large sense, though incidentally, the basis of the action, for without them the plaintiff could not succeed. As the claim against the defendant the Texas & Pacific Railway Company, must be based upon some implication to be drawn from facts aliunde the mortgage and the bonds of the Baton Rouge Company, we incline strongly to think that section 382 of the New York Code fixes the limitation governing this case, or, if it does not, then that section 388 does, and this, too, notwithstanding the provisions of section 410 of the New York Code, the second clause of which does not as we think, apply to a case like this, but must be confined to those examples of express trusts explicitly named therein. We have carefully examined the cases of Northern Pacific Railway Co. v. Boyd, 228 U. S. 48, 33 Sup. Ct. 554, 57 L. Ed. 931, and Angle v. Chicago, etc., Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55, but cannot find that they are controlling here, nor that the statute of limitations was either pleaded or discussed by the court in either of them.

We need give little time to a discussion of the defense of laches, though it is quite difficult to find in the testimony anything to justify or excuse the long delay in bringing the action, especially as the bonds on their face referred to the mortgage which was recorded in the proper offices in Louisiana whereby notice was given to all holders. We much incline to think that this defense also should be sustained, but prefer rather to base our decree upon the statute of limitation. As to the defense of laches we think consideration may helpfully be given to O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 46 L. Ed. 636. The court, during the trial, was purposely very liberal in the admission of testimony, especially when offered by the plaintiff, preferring to be free to give it any weight it might be entitled to rather than to exclude it altogether. But while dealing with the question of admissibility in that spirit, some few items of proffered testimony seemed to be so remote as to fall outside of any reasonable limit.

We think it results that the bill must be dismissed, with costs, and a decree accordingly may be prepared and submitted.

King & Osborn, of New York City (David Bennett King, W. Russell Osborn, and William A. Milliken, all of New York City, of counsel), for appellants.

Thomas J. Freeman, of New Orleans, La., and Lawrence Greer and F. C. Nicodemus, Jr., both of New York City, for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The facts are stated in the opinion of Judge Evans and need not be repeated here at length. The suit is brought upon 30 bonds issued by the New Orleans, Baton Rouge & Vicksburg Railroad Company in September 1872, payable 30 years from date— September 1, 1902—and secured by a trust deed from the railroad company to the Union Trust Company of New York upon all its property including its right of way and the land grant given the Baton Rouge Company by Congress.

[1] The proposition is somewhat startling that the holder of the obligations of one corporation secured by a mortgage on its property may maintain a suit 40 years after the date of such obligation and based thereon against another corporation not a party thereto. The Texas & Pacific Company has not in terms pleaded the statute of limitation of New York and Louisiana but it has clearly presented the issue of laches and delay by charging that the complainants have been "guilty of such laches in the premises that no complaint may now be made in respect of the said bonds." This being a suit in equity it is not essential that the statute should be specifically pleaded. Harpending v. Dutch Church, 16 Pet. 455, 10 L. Ed. 1029; Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836.

[2] In view of the facts, the defense of laches and unreasonable delay is always available and has we think been clearly established. The bonds matured September 4, 1902, but no suit was commenced until May 7, 1913, more than 10 years thereafter when the period of limitation in both Louisiana and New York had expired. All of the facts now relied on were known or could have been ascertained if any effort with that end in view had been undertaken.

The attitude of the owners of these bonds so far as appears from the record has been one of supineness and indifference during the entire period prior to the commencement of this action. As was said by the Supreme Court:

"The doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time is thoroughly settled. Its application depends on the circumstances of the particular case. It is not a mere matter of lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief." O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 46 L. Ed. 636.

We are of the opinion that the complainants waited too long before commencing the action.

The decree is affirmed with costs.