BOGERT et al. v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Second Circuit. July 2, 1917.)

No. 253.

1. CORPORATIONS ☞190—SUITS BETWEEN STOCKHOLDERS—PARTIES.

To a suit by minority stockholders against the majority stockholder based on the alleged misuse of its power as such for its own benefit and to the detriment of the minority stockholders, in which no corporate right is asserted, the corporation is neither an indispensable nor necessary party.

2. CORPORATIONS ☞204—LIABILITY FOR ACTS OF CONTROLLED CORPORATION.

A corporation which through its control of another, which held a majority of the stock of a third corporation, caused the latter to take action detrimental to the interests of its minority stockholders, is liable therefor to the same extent as though it had been itself the holder of the controlling stock.

3. ELECTION OF REMEDIES ☞7(1)—ACTS CONSTITUTING ELECTION—INCONSISTENCY OF REMEDIES.

A fruitless attempt to recover by an unavailable remedy does not constitute an election which will deprive one of his rights properly recoverable by a different and appropriate remedy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

4. EQUITY ☞71(1)—LACHES—LAPSE OF TIME—PENDENCY OF OTHER SUITS.

The right of a complainant to maintain an effective suit to enforce his rights is not barred by laches because of the lapse of time alone where there has been no prejudice from the delay, and where complainant did not acquiesce in the situation, and was not inactive, but mistook his remedy.

Hough, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern District of New York.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by Henry L. Bogert and others, executors, against the Southern Pacific Company. Decree for complainants, and defendant appeals. Affirmed.

For opinion below, see 226 Fed. 500. See, also, 215 Fed. 218, and 211 Fed. 776.

Joline, Larkin & Rathbone, of New York City (Lewis H. Freedman and Arthur H. Van Brunt, both of New York City, of counsel), for appellant.

Dittenhoefer, Gerber & James, of New York City (H. Snowden Marshall, A. J. Dittenhoefer, David Gerber, and Dudley F. Phelps, all of New York City, of counsel), for appellees Henry L. Bogert and others.

George Gordon Battle, of New York City (H. Snowden Marshall, A. J. Dittenhoefer, David Gerber, and Dudley F. Phelps, all of New York City, of counsel), for appellees Sarah Rosenfeld and others.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. The history of the long struggle of the minority stockholders of the Houston & Texas Central Railway Company with the Southern Pacific Company, arising out of the financial difficulties of the railway company, down to the present suit, can be learned by reference to Carey v. Houston & Texas Central Ry. Co. (C. C.) 45 Fed. 438; Id. (C. C.) 52 Fed. 671; Id., 9 C. C. A. 687; Id., 161 U. S. 115, 16 Sup. Ct. 537, 40 L. Ed. 638; McArdell v. Olcott, 189 N. Y. 376, 82 N. E. 161; Lawrence v. Southern Pacific Co. (C. C.) 180 Fed. 822; Id., 228 U. S. 137, 33 Sup. Ct. 497, 57 L. Ed. 768.

The grievance alleged in these prior suits was a corporate grievance, viz. that the foreclosure of the mortgages on the railway company's various lines had been brought about fraudulently by the Southern Pacific Company. The merits were not passed upon in any of these cases, each being dismissed on the ground that the decree of foreclosure could not be attacked collaterally because there was no proof of fraud, and in the last case supra because the railway company was an indispensable party.

The present suit on behalf of the minority stockholders was brought profiting by their previous mistakes, on an entirely different theory. It admits the validity of the foreclosure decree, asserts no corporate right of the railway company, but complains that the Southern Pacific Company has used its power as the majority and controlling stockholder for its own benefit to the detriment of the minority stockholders.

Briefly stated, the cause of action is as follows: The railway company owed two classes of indebtedness: First, interest in arrear amounting with expenses of reorganization to some $2,600,000; second, a floating indebtedness to the Lackawanna Iron & Coal Company, $555,914.25; to Morgan's Louisiana & Texas Railway & Steamship Company, $1,795,570.81; to the Southern Development Company, $858,113.15—aggregating, with interest, some $3,000,000.

The reorganization was, generally speaking, wise, fair, and eventual-

ly proved very successful. It was a part of the agreement that the Southern Pacific Company should pay the first indebtedness above mentioned, amounting to $2,602,615.77, and it did so. The stockholders of the railway company were given a right to their proportion of the capital stock of the reorganized company upon payment of their proportion of both the above accounts, which amounted to an assessment of about $71 a share. The Southern Pacific Company was given the right to take all stock not taken by the stockholders of the old company in consideration of its payment of the first account and of certain guaranties which it was never called upon to perform. As no stockholder of the old company was willing to pay the assessment of $71 a share, the Southern Pacific Company got the whole capital of $10,000,000 of the reorganized company for an outlay of about $26 a share. This is the unfairness which the minority stockholders say was imposed upon them by means of the control which the Southern Pacific Company, as majority stockholder, exercised over the railway company.

In the District Court Judge Chatfield has set forth the facts and the law very clearly in two opinions reported 215 Fed. 218, and 226 Fed. 500, and he entered a decree requiring the Southern Pacific Company to deliver to the minority stockholders of the railway company their proportionate share of the stock of the reorganized company and of the dividends collected, with interest thereon, upon payment of $26,026 a share, with interest from February 10, 1891.

We will briefly dispose of the defendant's objections, some of which were not pressed in the court below.

[1] (1) As in this case no corporate right at all was asserted, the railway company was not even a necessary party.

[2] (2) We think there is nothing in the objection that the Southern Pacific Company cannot be held liable because it was not a stockholder of the railway company. This is literally true, but the record makes it perfectly plain that through its control of the Morgan Company, which held a majority of the stock of the railway company, the Southern Pacific Company did cause the railway company to waive defenses originally pleaded in the foreclosure suit and to consent to a decree of foreclosure. It could not do with impunity indirectly what it had no right to do directly.

(3) The defendant insists that it should receive credit for so much of the railway company's floating indebtedness as it gave up to carry the reorganization through, and that the minority stockholders should be assessed for their proportionate share of it. There is great force in this contention as stated. The trouble is that it was never raised in the case by pleading or otherwise until an exception was taken to the report of the special master. There is nothing in the record to show what, if anything, the Southern Pacific Company did give up. So far as appears, it was not a stockholder of the Lackawanna Company or of the development company, and could be interested in the claim of the Morgan Line only to the extent that it would be entitled as a stockholder to receive after payment of that company's indebtedness. Furthermore, the Morgan Line was secured by bonds of the railway

company as collateral of the face value of $880,000. Under these circumstances it is quite impossible to say what, if anything, the Southern Pacific Company gave up in connection with the railway company's floating indebtedness.

(4) It is next objected that, because Lawrence, the complainant's decedent, had knowledge of and contributed to all the prior suits against the Southern Pacific Company, he is estopped by the decrees in those suits upon the principle of res adjudicata. But the issue proposed in them was different, and nothing was decided except that the respective courts had no jurisdiction.

[3] (5) Then it is argued that the complainant is concluded by virtue of an election between inconsistent remedies, to wit, because the earlier suits of which he was a promoter, proceeded on the ground of fraud, whereas this suit goes on the ground of an implied trust. But there was no election. These claims were not opposite and irreconcilable. None of the former suits passed upon the merits, the courts simply deciding that they had no jurisdiction to attack the foreclosure decree collaterally. Henry v. Herrington, 193 N. Y. 218, 86 N. E. 29, 20 L. R. A. (N. S.) 249. A fruitless attempt to recover by an unavailable remedy cannot deprive one of his rights properly recoverable by a different and appropriate remedy. Standard Oil Co. v. Hawkins, 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739; Barnsdall v. Waltemeyer, 142 Fed. 415, 420, 73 C. C. A. 515.

[4] (6) We do not think that the circumstances of this case justify defeating the complainant because of laches. One familiar ground is acquiescence, but the minority stockholders have not slept on their rights. They have been striving for many years to recover. No acquiescence, but exactly the contrary, a continuous and vigorous protest, appears. So far as the defense of laches depends, not on the mere passage of time, but upon another familiar ground, viz. a change in the situation prejudicial to the defendant, there is no evidence whatever to sustain it. The exact nature of the case has been known to the defendant from the beginning, and there is no substantial dispute of fact. No equities have intervened. It would be most inequitable to forfeit the complainant's rights notwithstanding the very long and unusual delay in prosecuting them.

(7) As the defendant owns the whole of the reorganized company's capital and contends that it is worth but little more than the assessment at $26 a share, a long inquiry would have to be gone into to ascertain its value. Therefore we think the court below was right in requiring the stock to be delivered in specie.

(8) What we have heretofore said on the subject of res adjudicata and election disposes of the objection made to the intervention of Gernsheim on these grounds. Intervention after interlocutory decree in favor of the complainant was proper. 1 Foster's Federal Practice, p. 434. The objection to the intervention of the representatives of Minzesheimer, deceased, because he is not shown to have owned his stock before the foreclosure proceedings, is founded on equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv). That rule, however, applies to stockholders' suits asserting derivative rights on behalf of the corpora-

tion, whereas this suit is a representative or class suit under equity rule 38 (198 Fed. xxix, 115 C. C. A. xxix).

Decree affirmed.

HOUGH, Circuit Judge (dissenting in part). While concurring in the main with the majority, it seems to me plain that defendant should have received credit upon the accounting for such of the floating indebtedness of the Houston, etc., Railway as it gave up in the reorganization as carried through. We have held the Southern Pacific to an account as a majority shareholder because the majority holder or holders of record were but defendant's puppets, to which proposition I agree.

But defendant when it took all the shares of the reorganized or new corporation, after these plaintiffs had declined to take any, certainly lost what the old company owed to the Southern Development Company and Morgan's, etc., Co., in the very real sense of having no one to pay the debts. To have caused the new or reorganized corporation to pay these debts (when Southern Pacific practically owned both debtor and creditors) would have been merely taking money out of one pocket and putting it in the other; the debts would have remained lost just the same.

It is because this defendant owned and controlled the companies which were at once confessed creditors, and themselves the immediate controllers of the old Houston, etc., Railway, that liability has been imposed on defendant; but why plaintiffs should now receive their share of what defendant got, without paying their share of what defendant lost, is quite beyond me. I think such credit or allowance inheres in the very reasons for our decision. If the Southern Pacific had itself been sole unsecured creditor of and majority shareholder in the old Houston, etc., Railway, and the same kind of reorganization had occurred, it is inconceivable that the minority stock owners would have been let in without paying their share of the floating debt. Yet we seem now to admit them as shareholders, while leaving the burden of unpaid debt to be shouldered by the concern which we hold to have been (in effect) the majority owner. That the point was not pleaded, is immaterial; the matter is a detail of accounting.

As for the difficulty of ascertaining just what was the indebtedness over collateral, it may be great; but the legal error below was in refusing to consider the matter at all.

On the question of laches, I venture to emphasize what seems to me the logical result of our decision. The action at bar was begun over 25 years after it arose. In the sense of inactivity or acquiescence there was no laches at all; but every effort was legally misdirected until this suit began. It rests not on fraud, nor concealment, but on the assertion of a legal right, which is now enforced by declaring a constructive trust and decreeing an accounting. No statute of limitations was pleaded; this we have said is not essential in equity (Waller v. Texas, etc., Co., 229 Fed. at page 92, 143 C. C. A. 363), meaning that the advantage of measuring by the statute a plaintiff's negligence in pursuit does not rest on pleading. If the act is relied on as a bar, it must be pleaded. Sullivan v. Portland, etc., Co., 94 U. S.

806, 24 L. Ed. 324. We have measured laches by analogy with the statute (Venner v. Central Trust Co., 204 Fed. 779, 123 C. C. A. 591), and done so (in admiralty) even when the party claiming the benefit was a foreign corporation in whose favor the statute did not run (Davis v. Smokeless Fuel Co., 196 Fed. 753, 116 C. C. A. 381).

But in principle this court has adhered firmly to the doctrine that its equity jurisdiction is not subject to limitations of time or other matters created by state laws. Kirby v. Lake Shore, etc., R. R., 120 U. S. at page 138, 7 Sup. Ct. 430, 30 L. Ed. 569. And see Hubbard v. Manhattan Trust Co., 87 Fed. 51, 30 C. C. A. 520. Yet where the jurisdiction is concurrent as between law and equity, the chancellor is bound to apply the statute (Hall v. Law, 102 U. S. at page 466, 26 L. Ed. 217); "in other cases (he) acts only by analogy, and not in obedience to the statutes."

It follows that the present decision holds, in substance, that there is no remedy at law for these plaintiffs, that equity is the only jurisdiction for them, and that 25 years of failure to discover an always existing cause of action, based on facts of almost public notoriety, does not constitute laches, in the absence of silence, inaction, or acquiescence by plaintiffs, or loss of advantages or change of situation caused or contributed to by plaintiffs on defendant's part.

In this holding I concur, extreme as the facts are, on the assumption that the case is not one of concurrent jurisdiction. I make that assumption only because the parties have assumed it.