## BOGERT et al. v. SOUTHERN PAC. CO.

(District Court, E. D. New York. November 6, 1922.)

Affidavits ⬤⇒18—Not evidence as to conclusions stated.

An affidavit containing conclusions of both law and fact can only be used as evidence in so far as it sets forth definite statements of fact.

---

## BOGERT et al. v. SOUTHERN PAC. CO.

(District Court, E. D. New York. November 6, 1922.)

Corporations ⬤⇒575—Majority stockholder, distributing stock of reorganized corporation among minority stockholders, held entitled to charge only actual expenditures in reorganization.

A corporation, which as majority stockholder in another corporation, through a reorganization plan, has acquired all the stock of the reorganized company, but has been required by the court to make a pro rata distribution of the new stock among the minority stockholders of the old corporation, on payment by them of their proportionate share of unsecured debts of the old corporation which it has paid to effect the reorganization, is entitled to charge only its actual expenditures in that behalf, and not the face value of the claims discharged, and has the burden of proof to show the amount of such actual expenditures.

In Equity. . Suit by Henry L. Bogert and others, as executors, etc., and others, against the Southern Pacific Company. On settlement of final decree.

Dittenhoefer, Gerber & James, of New York City (R. Snowden Marshall and Dudley F. Phelps, both of New York City, of counsel), for plaintiffs.

Larkin, Rathbone & Perry, of New York City (Gordon M. Buck, of New York City, of counsel), for defendant.

CHATFIELD, District Judge. This is an application for final decree in accordance with a mandate of the Supreme Court, which in general affirmed the original decree entered herein on the 13th day of December, 1915, but remanded the cause to the District Court for further proceedings, in certain particulars, in conformity with the opinion in 250 U. S. 483, 39 Sup. Ct. 533, 63 L. Ed. 1099.

One matter as to which the former decree was opened related to a hearing upon intervening petitions. These have been disposed of by this court. (See decree of January 12, 1920.)

A second modification related to a determination as to undue hardship from conditions subsequent to the decree, involved in the delivery of stock in specie to the plaintiffs. This question was referred by this court to a special master, and upon the reference the defendant withdrew its opposition to this portion of the decree, and the former findings will therefore be re-established and decree entered accordingly.

The third modification allowed opportunity to the defendant to show that it was entitled in equity to receive from the plaintiffs a proportionate share of certain amounts claimed to have been surrendered, disregarded, contributed, or expended by the defendant (directly or by its agents on its account and at its expense) in satisfaction of various items of floating indebtedness against the Houston & Texas Central Railway Company, which items, under the decision of Northern Pacific Railway Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931, would precede the right of the stockholders of the railway company in case of a reorganization through foreclosure.

These items were of various character and had been disposed of upon the original decision (226 Fed. at page 511) by the statement that the rights or claims of these creditors had been wiped out through foreclosure by agreement or waiver, and that the majority stockholder (the defendant) could not, as against the minority stockholders, allege their existence, except in so far as they could be claimed to have been left outstanding as admitted obligations of the Houston & Texas Central Railroad Company, which took over the properties as a result of the reorganization, and all of whose stock was bought in by the defendant, through its control as majority stockholder, at the rate of $26 a share, while the minority stockholders were not allowed to participate, except upon the payment of a much greater sum of money.

This question in the Circuit Court of Appeals was disposed of largely as a matter of pleading. 244 Fed. 61, 156 C. C. A. 489. But the Supreme Court decided that the Southern Pacific Company might

have, through its subsidiaries, expended something, representing the cost of taking care of some part of the unpaid floating debt, for which some $10,000,000 of stock of the new company was available to such of the floating debt creditors "as should provide the cash required to pay the floating indebtedness and reorganization expenses and charges, but no floating debt creditor took advantage of this provision, and all were thus wiped out in the reorganization." 250 U. S. at page 495, 39 Sup. Ct. at page 538, 63 L. Ed. 1099.

If the defendant, by its own act or by the act of one of its subsidiaries, became subrogated to any part of this floating debt, and if the defendant paid anything therefor, then in equity the defendant could ask to be reimbursed in the proportion by which the plaintiffs would share in the result as expressed by a pro rata division of the cost.

It appears from the record that these floating debt items included a claim of the Morgan's Louisiana & Texas Railroad & Steamship Company, which made advances to the railway company and took demand notes therefor, amounting, less payments on account, to $1,-287,502.38. There was also owing, on January 1, 1887, to the Morgan's Company on open account $8,565.15, which amount was marked off to profit and loss by the Morgan's Company in June, 1904. After crediting this collateral, the total indebtedness of the railway company to the Morgan's Company was $603,954.74, and interest is demanded on this amount. The books of the Morgan's Company show that this claim was marked off to profit and loss in June, 1907, as uncollectible.

The Morgan's Company also has notes and stock of the Texas Central Railway Company which realized some $49,404.08, as well as some lands and notes yet unsold, and from which the share of the Morgan's Company will be not more than $5,393. The defendant, the Southern Pacific Company, owned all the capital stock of the Morgan's Company, except that held by directors to qualify.

Another item of the floating indebtedness arose from advances by the Houston Direct Navigation Company's claim to the railway company, which, on January 3, 1887, amounted to $48,400.20, of which $48.40 was paid by the Morgan's Company on December 31, 1896, and the balance marked off to profit and loss. Interest is claimed on this item also. The Morgan's Company owned all the stock of the navigation company, and in turn, as has been stated, was itself owned by the defendant.

Another item of floating indebtedness was a bill for steel rails furnished by the Lackawanna Iron & Coal Company, and for which notes were given by the railway company for $445,175.50, against which certain collateral was held in the form of bonds which were the property of the Pacific Improvement Company, and were loaned by the Pacific Improvement Company to the railway company to be used as such security. These notes were, subsequent to the reorganization, paid off on January 16, 1891, and new notes of the Pacific Improvement Company given for the claim, with interest. The amount of these new notes was $533,510.80. They were made payable to the Pacific Improvement Company, and indorsed by it to the

Lackawanna Iron & Coal Company. They were also indorsed by Collis P. Huntington, the president of the Southern Pacific Company, and were paid when due, leaving an aggregate of $533,830.56, for which interest is claimed from December 31, 1891. This claim was marked off to profit and loss by the Pacific Improvement Company on December 31, 1902.

The Southern Pacific Company and the Pacific Improvement Company were closely allied, the stock ownership of the two companies was substantially the same, and they had offices in common. During the year 1891, and subsequently, the Pacific Improvement Company purchased and assigned to the defendant certain judgments and claims amounting to $53,699.96, which, as a matter of general policy, and apparently as a part of the reorganization plan, although wiped out by the foreclosure as liens against the property of the railway company, were recognized by all parties as obligations which the railroad company should liquidate, and which the defendant undertook to liquidate as the holder of all the capital stock of the railroad company.

As has been previously held by this court in connection with these claims, this last item of $53,699.96, with interest from June 30, 1899, has been shown to have been advanced by the Southern Pacific Company, and plainly comes within the direction of the Supreme Court that in equity the minority stockholders should pay their proportionate share of this advance, as the stock to be delivered to them has received its share of the benefits resulting from this payment, and the defendant, with no set-off or other consideration, was deprived of that amount of property. The Supreme Court spoke of the floating debt "at the time of the foreclosure," and allowed the defendant to give proof of its "expenditures of money in wiping out the floating indebtedness." This meant expenditures at any time, but only for payment of the original debts. Such debts properly included these judgments.

From the original decision in the case (226 Fed. 500), it appears that various suits against the railway company (alleged by some of the defendants therein named, to be collusive), and in which receivers were appointed, were begun as early as 1885, and in one action the Southern Development Company (one of the floating debt creditors above named) was the plaintiff. Other actions for foreclosure were brought with relation to mortgages of which the principal was not then matured, and throughout the entire course of this litigation it was contended that the railway company had lands and property sufficient to pay its floating indebtedness and applicable thereto, but which were not available therefor unless the ultimate rights of the bondholders and stockholders, were materially injured in so doing.

Ultimately the various actions were all consolidated, and the various parties, including the holders of all these floating indebtedness obligations (except the tort judgment creditors, whose claims have been above referred to) waived payment, and the claims were wiped out as against the railway company and the bondholders. Admittedly the defendant in this action procured these waivers, and the stock and properties of the railway company through the reorganized railroad

285 F.—4

company became a part of the defendant's system. The record now shows that the subsidiary companies gave up their rights to prior payment of the floating indebtedness, but did not then assign, satisfy, or mark off on their books the items as debts against some one.

In the meantime the defendant had shut out the minority stockholders, by offering them participation on the basis of payment in full of their share of all expenses, floating indebtedness, and such other charges as were included in fixing the amount of $73, and then of $71.40, per share, instead of $26, which the defendant, as majority stockholder, paid to cover the actual expenses of reorganization. The floating indebtedness and judgments were outstanding long thereafter, and yet the defendant used these amounts for its own purposes long before the subsidiaries marked them off to "profit and loss," without fixing any value therefor, and without receiving anything in exchange. No one of the subsidiaries redeemed the stock issued to cover its floating debt.

If defendant has been trustee since 1885, and not since 1889, then it acquired its rights (through its subsidiaries) as trustee, and can be reimbursed only for cost, and not for face value, of claims. If the subsidiaries kept the debts alive after 1889–90, and defendant never in effect expended anything, then the burden would be on defendant to show that it acted through its subsidiary, and also through its subsidiary gave some consideration, which was credited to the subsidiary by the defendant in cash or in some way other than a cash payment. The defendant has shown no such consideration, and the proof shows that the subsidiaries kept the floating debt claims alive until after the acquisition by the defendant of all the stock, and even in some cases until 1907.

If the defendant, through one of its subsidiaries, acquired a claim prior to the creation of the trust relation, the defendant could use it as it saw fit up to an equitable value therefor. As trustee it would not be limited to what it cost. Prevost v. Gratz, 19 U. S. (6 Wheat.) 481, 5 L. Ed. 311. But if the claim was not turned over by the subsidiary to the defendant until after creation of the trust relation, and if it was then valued or paid for by the defendant at a price less than its face value, the defendant must show the amount paid, and can ask reimbursement only for the proportionate share of that amount.

On the assumption by this court that the defendant could prove, and desired to prove, the actual amounts which it credited to its subsidiaries, the Morgan's Development Company, the Southern Development Company, the Pacific Improvement Company, or the Navigation Company, in settlement of their advances, or in obtaining a relinquishment of the indorsements of, Mr. Huntington, the defendant's president, and upon the assumption that the figures which had entered into the item of $71.40 could be substantiated, in so far as they represented a claim of actual expenditures, and with the idea that the Supreme Court intended this court to find out whether or not such payments were actually made, or whether the Southern Pacific Company and its subsidiaries had liquidated these debts at a discount, or had treated them as worth less than par, in dealing with the defendant's subsidi-

aries, or to find out whether the property obtained by the consolidation and the advantages to the subsidiaries in the Southern Pacific system were of so great value that these properties were freed from the items of floating indebtedness, and that the payment for the floating indebtedness was met by advantages to its subsidiaries, acquired through such consolidation, this court ordered a reference to allow the defendant to put in such proof.

It was apparent that, when the Pacific Improvement Company, the Southern Development Company, and the Morgan's Steamship Company, in their own books, disposed of these items, if they made any particular record of them, that therefrom might be gathered some light as to whether the defendant company incurred any expenditure or was deprived of any material consideration in securing the release of the floating debt. On the other hand, if the defendant had upon its books, or could show through any evidence, the course of dealing by which it acquired these debts, then that evidence could be taken into account in determining the question left open by the Supreme Court.

But upon this reference the defendant and the plaintiff stipulated the facts as to the creation and amount of these various debts and the times when they were disposed of, as above indicated, and it appears now that they were marked off to "profit and loss" at such time as seemed best from the standpoint of the subsidiary; but no evidence was presented from which the question left open by the Supreme Court could be determined, even by inference or presumption. The defendant did not even put in evidence the basis of computation upon which the figures of $73 and $71.40 per share were made up, nor show any agreement with the subsidiaries as to what would be done if no creditor and no stockholder took stock in the new company at the amount demanded.

It should be noted that the defendant also claimed before the master, as contributions, the acquisition by it through the railroad company of certain other links in the defendant's system, subsequent to the reorganization of the railroad company, which it claimed were for the benefit of the stockholders of the Houston & Texas Central Railroad Company, rather than for the benefit of the defendant itself. The special master excluded these items as not being within the scope of the suit, as well as not having been shown to have been expenditures for which the minority stockholders are bound to pay their proportionate share. This finding of the master has been previously confirmed and the claims excluded.

On the main issue the master made certain findings and presented to the court the testimony stipulated. But inasmuch as the defendant had not definitely closed its testimony, nor was it shown by the record that the defendant intended to offer no proof of actual payments or credit entries in favor of its subsidiaries as above indicated, this court held a further hearing and reserved for its own determination the question whether as a matter of law, upon the facts shown by the record, the defendant was and is entitled to exact from the plaintiffs' contribution pro rata for the surrender of the floating indebtedness items known as the Lackawanna Steel claim, the Morgan's Company

claim, and the Navigation Company claim. Involved incidentally in the determination of this question is the claim by the defendant for interest upon these amounts, and also its allowance of credit to the amount of $370,500 upon the collateral held by the Morgan's Company, consisting of certain bonds having a face value of $570,000.

As to these bonds, the defendant credited them on December 31, 1892, at their then market value, instead of their face value. These were similar bonds to some held by the Southern Development Company, and it does not appear from the record what was done by the Southern Development Company with the balance of the bonds in their hands. They, however, apparently will be paid in full. But the testimony does show that on December 31, 1892, some time after the reorganization, these $570,000 in bonds of the railroad company, which had been and which must have been obtained as a part of the reorganization, had a market value of $370,500, and that at that time the Morgan's Company, as holder of some of this floating indebtedness, realized upon its collateral, or that the Southern Pacific Company realized upon it for the Morgan's Company, and yet is unable to show the circumstances under which this was done, what became of the balance of the floating indebtedness, or why the various parties at that time took over or disposed of this collateral at market price, and without any valuation of this collateral, from the standpoint of the defendant, the owner of the entire system.

The defendant contends, and the special master inferred, that, because the collateral was put in at market value, this was a correct valuation from the standpoint of the stockholders of the railway company. Certainly this collateral could not be marked off at less than market value because that much could be realized upon it in the open market; but whether this was a correct valuation, as a part of the settlement after reorganization, does not necessarily follow, and it emphasizes the proposition that the defendant cannot now demand contribution upon the basis of values due at any particular time it might have had the right to demand or to exact, unless the defendant can show that it either did so in fact, or that it has not settled the claims with its subsidiaries for these items of floating indebtedness upon some other basis, even to the extent of having agreed with them to discount the claims, or even waive them entirely, in consideration of advantages obtained in other directions.

The court will not attempt to discuss the various items of evidence from which the parties draw one conclusion or the other. The master and the defendant take the position that, as a matter of law, a trustee who does not hold property ex maleficio is not precluded from compensating himself by taking profits accruing upon such assets as at the time of acquisition he had a right to treat as his own, and to deduct, if necessary, from the trust estate. They draw the conclusion from the fact that (as recognized by all the courts) the acts of its subsidiaries should be treated in equity as the acts of the Southern Pacific Company when the subsidiary was acting for the Southern Pacific Company. But the subsidiaries were independent corporations and all their acts were not acts of the defendant. The defendant and

the master seem to hold that the defendant can now disclaim any intention to have ever surrendered or to have satisfied the items of floating indebtedness, and to still treat them as money owing to the subsidiary, and hence to the defendant, in spite of the testimony that they were marked off to profit and loss.

The defendant suggests, and the master has followed its contention, that the time of the reorganization should be taken as the date at which the rights of the parties should be established, and taking the facts stipulated as a basis, and on the conclusion that "the Supreme Court has decided that any properly chargeable debt of the railway company to the Morgan's Company shall now be treated as having been due the Southern Pacific Company," he finds a presumption that the defendant did what it now wishes it had done, and therefore concludes that in equity it is entitled to decide that it did these acts, in the face of the testimony that the claims were actually waived in the reorganization, and that the various holders of these items of collateral indebtedness, not only postponed their rights at law under the foreclosure, but apparently subsequently acquiesced in the surrender of the balance of their claims, after realizing on what collateral they held, without having a bookkeeping payment, and apparently for the advantages to be derived indirectly through the use by the defendant of the entire stock of the Houston & Texas Central Railway Company.

It has at all times been recognized that the defendant, through its subsidiaries, might attempt and might be successful in reinstating these claims, upon waiving the statute of limitations, as equitable claims against the railroad company, which took over the property upon reorganization, and which profited, in any event, by the failure to keep the claims open as debts ahead of its obligations to stockholders. If the claims are still existent, or can be used as existent, and if the marking off of the claims was in reality an assignment to the defendant, the minority stockholders having agreed to waive any question of limitation, then those claims are just as valid against the railroad company as against the individual stockholders.

But the defendant has in no way furnished any proof that it ever did incur any obligation, or advance any money, or make any expenditure, on its own part, or through its subsidiaries, in changing the condition or modifying the existence of these three floating indebtedness items. It never, for instance, acquired these in the way in which the judgment claims were subsequently purchased, and the record seems to show that the defendant, as majority stockholder, without cost to itself, has at all times held the property free of any floating indebtedness claims, since the time when it took over the entire stock at the rate of $26 a share, and even obtained the release of the indorsement of its president on certain collateral, by what appeared to be an agreement that the subsidiaries would waive their right to payment of the floating indebtedness, except in so far as they made use of the collateral in their hands.

It is apparent that the minority stockholders should, no more than the majority stockholder, obtain their shares of stock without meeting their obligations. But there is no evidence in the record from

which this court can now conclude that in equity or in law the minority stockholders must pay to the majority stockholder a proportion of those amounts which the majority stockholder, as such, has never actually advanced or given any cash consideration for, and which, even if forgiven by its subsidiaries, may have inured to their advantage, and which they even now may be able to collect from the railroad company as an equitable claim.

Decree will therefore be entered, directing additional contribution on behalf of the plaintiffs for their pro rata shares of the judgment claims and interest above referred to. In other respects, the items for which contribution is demanded by the defendant will be held not substantiated by the proof, and contribution therefor denied.