## BOGART et al. v. SOUTHERN PAC. CO.*

(Circuit Court of Appeals, Second Circuit. May 14, 1923.)

### No. 247.

1. **Corporations ⬤⟿575—Majority stockholder, purchasing property on foreclosure, held entitled against minority stockholders, decreed stock in reorganized corporation, to credit for inferior claims lost.**

    Where the minority stockholders of a railroad company, whose property had been sold under foreclosure to defendant corporation, which controlled the majority of stock, had been decreed to be entitled to receive from the defendant stock in a reorganized corporation on surrender of their original stock and payment to defendant of the amount expended for the benefit of the reorganized corporation, defendant was entitled to credit for the amount of claims against the original corporation, which were in fact held by it and which were inferior to the debt foreclosed, and were lost by the foreclosure proceedings.

2. **Corporations ⬤⟿575—Majority stockholder, purchasing on foreclosure, held not entitled on reorganization to credit from minority stockholders for improvements to property acquired.**

    Where minority stockholders of a railway company were entitled to recover from defendant corporation, who as majority stockholder had been responsible for the sale of the railway company's property under foreclosure, stock in a reorganized company on surrendering their old stock and paying their portion of the amounts expended by defendant for the benefit of the new company, defendant was not entitled to credit for the subsequent acquisition by the reorganized company of branch lines and coal mines, since those were but improvements had after title had been acquired, and whatever value there may be therein is reflected in the value of the new stock, and the loss resulting is similarly represented.

3. **Courts ⬤⟿343—Intervention in federal court not allowed as a matter of right in class suit after final decree.**

    Even where the suit was brought as a class suit for the benefit of stockholders under equity rule 38 (115 C. C. A. xxix, 198 Fed. xxix), the other stockholders are not entitled, as a matter of right, to intervene therein and claim the benefits of the suit after final decree had been entered, and the final effect of the decree was not destroyed by an appeal therefrom, which resulted in a remand for further determination of the amounts to be paid by the stockholders, without a reversal of the decree.

4. **Courts ⬤⟿343—Intervention not granted as a matter of grace, where demands were stale.**

    Where a suit by minority stockholders on behalf of themselves and others similarly situated had been prosecuted for a number of years, during which it was evident that the recovery of any stock by them would be conditioned on their making payments to an amount not yet ascertained, stockholders who did not during that period intervene in the suit will not be allowed as a matter of grace to intervene after final decree establishing their rights had been entered, because their demands were stale having existed for more than 30 years, and they were guilty of laches in enforcing them.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by Henry L. Bogart and others, as executors of Walter B. Lawrence, deceased, and others against the Southern Pacific Company. From the final decree (285 Fed. 46), defendant appeals. Modified and affirmed.

See, also, 285 Fed. 46, 54.

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Mandate amended 292 Fed. —.

This litigation was last before us in July, 1917, when we affirmed the final decree entered in the court below on October 5, 1916. 244 Fed. 61, 155 C. C. A. 489. Thereafter defendant obtained certiorari. The result is reported as Southern Pacific Co. v. Bogert, 250 U. S. 485, 39 Sup. Ct. 533, 63 L. Ed. 1099, decided June 9, 1919. Of the plaintiff appellees enumerated in the citation, Bogart et al., as executors of Lawrence, deceased, have borne the burden of this truly extraordinary litigation, extending over upwards of 30 years, and sufficiently set forth in 250 U. S. at page 489, 39 Sup. Ct. 533, 63 L. Ed. 1099. Their rights are represented by Fitch and Landale, as surviving trustees of a committee of minority shareholders, who appear as parties respondent. Rosenfeld et al., executrices of Minzensheimer, and Gernsheim, were permitted to intervene as plaintiffs for their own interests prior to the entry of the final decree of 1916, and their admission we approved in 244 Fed. at page 64, 155 C. C. A. 489.

When the cause was returned from the Supreme to the District Court, and in November, 1919, the remaining appellees, O'Reilly, Reid, Chase, Newkirk, Polack, and Corn Exchange Bank were severally permitted to intervene. All these persons, except Newkirk, had originally applied for intervention in the Supreme Court of the United States. 250 U. S. 498, 39 Sup. Ct. 533, 63 L. Ed. 1099. That court denied the petitions, without "expressing any opinion on their merits and without prejudice to the right to apply to the District Court for leave to intervene and to share in the benefits of the decree." Thus the final decree as appealed from specifically awarded on November 17, 1922, recoveries in similar terms to all these interveners of 1919, and this relief is identical mutatis mutandis with that given to the executors of Lawrence. In this court, and shortly before this cause was reached for argument, similar applications to intervene were made by Hagedorn, Solder, Roberts, and Rothschild. These applications were heard cotemporaneously with the argument of the main case.

The scheme of the District Court's decree of 1916 was to ascertain and declare that the defendant held and possessed a certain number of shares of the Houston & Texas Central Company (hereinafter called "Railroad Company") in trust for the benefit of each party plaintiff, to which shares said party plaintiff was immediately entitled, provided that each of said parties should surrender to defendant the shares of the company out of whose foreclosure and re-organization this litigation grew (hereinafter called "Railway Company"), and also pay to defendant $26,026 with interest, etc., for each share of Railroad Company's stock delivered to them by defendant. The decree also gave certain directions as to interest and accumulated dividends, which need not be referred to. The modified decree of 1922 is in the same form and gives exactly the same relief, except that the amount to be paid by each party plaintiff (including the new interveners) is increased by 53.7 cents, with interest, etc. The defendant in substance, alleging for error that it was wrong (1) to permit the interveners last above enumerated to join as plaintiffs, and (2) that the increments to the amounts payable by plaintiffs severally were far too small, took this appeal.

Arthur H. Van Brunt, Gordon M. Buck, and Larkin, Rathbone & Perry, all of New York City, for appellant.

Dittenhoefer, Gerber & James, of New York City (H. Snowden Marshall, of New York City, of counsel), for appellees Bogart et al., Gernsheim, and executrices of Minzensheimer.

Laughlin, Gerard, Bowers & Halpin and Dudley F. Phelps, all of New York City (Spotswood D. Bowers, of New York City, of counsel), for remaining interveners and on behalf of motion to intervene.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It is unnecessary and undesirable to recapitulate the history of this amazing litigation. For our purposes, the facts recited in the opinions ren-

dered when the cause was here last and the ruling decision of the Supreme Court are sufficient.

The duty of this court is, and that of the District Court was, to comply with the mandate of the Supreme Court. That tribunal reviewed the decree of this court, which affirmed the District Court decree of 1916, which decree was plainly final. The mandate (which is contained in the present record) did not in terms reverse anything; nor did it in any way refer to the District Court decree of 1916. It directed that our decree be "modified as indicated in the opinion of" the Supreme Court, and "further ordered that the cause be remanded to the District Court for further proceedings in conformity with the opinion of this court" ; i. e., the Supreme Court. In other words, the existence and finality of the decree of 1916 remained, and remained unaffected, except as indicated by the opinion of Brandeis, J.

That opinion shows that the only change directed in the result reached by the final decree aforesaid was to increase the amounts payable by the several stockholders of the Railway Company as a condition or prerequisite of their obtaining those shares of the Railroad Company to which they had so long asserted right. The reasons for this modification are plainly set forth by the highest court. It was declared as the duty of the District Court to ascertain "to what extent the wiping out of any indebtedness and any expenditure made by the Southern Pacific in connection [with the foreclosure and reorganization of the Railway Company] will inure to the benefit of such of the minority stockholders of the old company as receive stock in the new," and further to conduct this investigation in accordance with the rule announced, viz. that "some adjustment should obviously be made so as to compensate the Southern Pacific for any contribution made at its expense to the value of the stock in the new company of which the minority stockholders may get the benefit."

And the reason for the rule was and is that "the purpose of this proceeding is not to punish the Southern Pacific, but to declare and enforce its obligation as a trustee." While the reason for its being a trustee is that some 34 years ago it was in effect the controller of the Railway Company, it was in effect the majority shareholder, and it was therefore under an obligation to manage its affairs, including any reorganization necessary or advisable for the continuance of business, for the benefit of all the stockholders, and not for its own aggrandizement. Noyes, Intercorp. Relations (2d Ed.) § 300.

Of record defendant did not own a share of the old railway stock; nor had it as creditor any claim of its own capable of enforcement by suit. But all the courts have gone through these forms to the substance of the matter, and held that, since the Southern Pacific directed its subsidiaries, servants, allies, or agents (who were creditors and shareholders) to wipe out or clean up the Railway Company and then reorganize it, it must be treated as having done the work itself, and as a trustee for those who were in effect minority holders of the stock of which it, also in effect, held a majority.

But defendant, being in this position of fiduciary responsibility, is not deprived of its right to an accounting. If it foreclosed upon the

Railway Company, as in effect it did, and wiped out the legal interest of these plaintiffs by such foreclosure of superior lien, it is in equity entitled to show what it contributed to the corporation that arose out of the foreclosure when it is required to account for what it personally gained by or out of the same. Thus are plaintiffs entitled to share in the benefits of their trustee's actions. They are not required to shoulder any of the burdens unless they demand the benefits; but the entire benefit that is theirs can be no greater (share for share) than that accruing to defendant. This has been the theory of decision in this particular case from its beginning; that decision stands affirmed by the Supreme Court mandate; and since June, 1919, the District Court and this court have been free to act only on the details of the trustee's accounting.

The analogy of an ordinary foreclosure is perfect. The court below proceeded correctly in directing a master to ascertain what were the burdens assumed or benefits lost by Southern Pacific Company by reason of its foreclosure upon the Railway Company. We find the report of Special Master Decker full and satisfactory; indeed, his findings of fact in the ordinary sense of that phrase have not been doubted or controverted. He reported in substance that the foreclosure had wiped out the indebtedness of the Railway Company to the Morgan Company, the Houston Direct Navigation Company, and the Lackawanna Iron & Coal Company, and these three corporations, under the theory of suit hereinabove set forth, and now consistently adhered to through all the courts, were in substance and effect this defendant.

[1] Pursuing the foreclosure analogy, it follows that, since the Southern Pacific in effect foreclosed on the Railway Company, but (for the sums due to the three last-named corporations) was itself a creditor inferior in security to the lien which lies at the basis of the reorganization—i. e., the Railroad Company—defendant lost those debts. Therefore, when defendant is treated as the purchaser in foreclosure for the benefit of all shareholders, including these plaintiffs and itself, it is entitled to bring into the account, as an offset to what it got for these plaintiffs, a due proportion of what it cost the foreclosing shareholder to get the same.

Therefore the master reported, and we find, that the Morgan, Houston, and Lackawanna items should be allowed upon the accounting; result being that as to each share of stock obtainable by any plaintiff there should be paid the additional sum of $6.04 on account of the Morgan Company claim, with interest from the time when said loss was liquidated, to wit, December 31, 1892; that there should be allowed the further sum of .48 cents per share as aforesaid on account of the Houston Direct Navigation claim, with interest from December 31, 1896; and the further sum of $5.34 on account of the Lackawanna Company claim, with interest thereon from December 31, 1891. We are constrained to disagree with the learned court in setting aside the master's report. The three demands favorably reported by the master were existing claims against the Railway Company, capable of reduction to judgment, to a considerable extent actually reduced

to judgment, and they were wiped out to the benefit as much of these plaintiffs as of anybody else. The same reasoning that compels defendant to account for what it got by foreclosure secures this offset. On any foreclosure the question is fair: How much did the property cost the successful bidder? And if such bidder bid on his judgment, the property costs him the amount of the judgment plus whatever claims he owned that were wiped out by that judgment, and/or whatever superior liens he had to discharge to secure clear title.

[2] But by the same reasoning we perceive no equity in defendant's demands arising out of the subsequent acquisition of certain adjunct or branch railway lines and coal mines in order to expand the business of the new Railroad Company. Everything urged by defendant on this subject may be admitted, but, still pursuing the analogy of an ordinary foreclosure, these small railways and these coal mines were but improvements added to the res obtained in foreclosure after title had been acquired. Whatever value there may be in such improvements is reflected in the value of the new stock, and whatever loss resulted is similarly represented, though that perhaps (the record is not clear) may account for the infrequency of dividends.

[3] Having already pointed out that the final decree of 1916 was never reversed by the Supreme Court, we are of opinion that it was error in the District Court to permit the belated interventions of O'Reilly, Reid, Chase, Newkirk, Polack and the Corn Exchange Bank. The Supreme Court gave no directions in this matter. These persons applied after final decree, and no authority is or can be cited holding that intervention is a positive legal right after such decree entered; nor does appeal vacate decree. As we pointed out in 244 Fed. 64, 155 C. C. A. 489, this is not a suit upon a derivative right under equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv) but is a class suit under rule 38 (198 Fed. xxix, 115 C. C. A. xxix). The nature of that rule has been considered in Ben Hur v. Cauble, 255 U. S. 356, 41 Sup. Ct. 338, 65 L. Ed. 673, and In re Engelhard, 231 U. S. 646, 34 Sup. Ct. 258, 58 L. Ed. 416. And see Hopkins Eq. Rules, p. 168, for its history.

It may be assumed as true that in such a suit any person similarly situated and belonging to the same class as the original plaintiffs may join as coplaintiff, under reasonable restrictions as to time and control of litigation. It is also true that, where the question is of the distribution of a fund, it is the common practice of courts to admit persons even in default to participate in the fund (if otherwise entitled) as long as the fund remains in whole or in part undistributed.

It was proper that the interlocutory decree herein (entered December 13, 1915) provided for the appearance of stockholders other than those who were already plaintiffs, and this is as much as can be justified by reason, or by the decision much relied on by appellees. Trustees v. Beers, 2 Black, 448, 17 L. Ed. 327. In that case there was a res on which a certain mortgage was declared to be a lien superior to that accorded it before suit. In substance there was a fund, and a decree which had not provided for an interlocutory ascertainment of the other lienholders was amended in that regard.

This case bears no relation to the enforcement of liens or claims or debts against a given fund or a given piece of property. Each plaintiff is asserting his own right to an accounting from his own trustee.

[3] The original promoters of suits seem to have demanded the new stock without paying anything, but for years now any one inquiring would have ascertained that equity would not grant them such demands. More than 30 years ago plaintiffs were offered the right of receiving what they now acquire on payment of some $71 per share, and the result of this generation of litigation is that they get exactly the same thing on the payment of a somewhat smaller sum. Non constat that any other shareholder was a person similarly situated; i. e., willing to pay for what he got. It is now very easy, after the ship of litigation has emerged from a most stormy sea, for persons, who years ago did not seek to be even passengers, to climb on board and enroll themselves among the crew.

Taking the most favorable date, the "lack of diligence in seeking a remedy" (250 U. S. 489, 39 Sup. Ct. 533, 63 L. Ed. 1099) of these interveners must be measured by what should have been their treatment had they applied in 1913, when the present suit began. Perhaps they would have been admitted; we make no holding on the point. But the latest date that can be considered is 1915, when the proceedings under the interlocutory decree were in progress. The Minzensheimer estate and Gernsheim "got on board" at the later date, and for divers reasons their lack of diligence, if any there was, has been excused. But, as to the remaining intervention seekers, their claims are in the first place remarkably stale, a phrase which merely means that they have for a very long time—i. e., upwards of 30 years —remained unasserted. 16 Cyc. 152. Further, these interveners have all been guilty of marked "lack of diligence in seeking a remedy," which is laches, and they are not now entitled in equity to avail themselves of the remedies of others.

It is not thought necessary to go into the details of each petition. We hold: (1) That as of right they cannot come in, final decree having passed; whether there ever was such absolute right is a point not before us; and (2) that of grace none of them should have been admitted when admission granted, because their demands were stale and themselves guilty of laches. Whether there was any power in the District Court to open the final decree further than the mandate from the Supreme Court required, is a point not necessary for decision, and on which we express no opinion.

Thus the final decree must be further modified by striking therefrom so much thereof as relates to relief granted to the interveners admitted after the filing of the mandate in the Supreme Court; also by the addition of the items hereinabove specifically set forth, and based on the Morgan, Houston, and Lackawanna claims, as sums to be paid by each successful plaintiff as a condition of obtaining the stock sued for. As thus modified, decree affirmed.

The pending applications for interventions are severally denied. Appellant will recover the costs of this appeal against all the appel-

lees, and also recover the costs of the District Court after Supreme Court mandate filed. The earlier costs of the District Court will remain in favor of plaintiffs, other than the interveners joining after mandate filed.